UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
UNITED STATES OF AMERICA,                    Cr. No. 14-00248 (PKC)

vs.

MICHAEL GRIMM,

        Defendant.
---------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DISCOVERY ON THE ISSUESOF SELECTIVE AND VINDICTIVE PROSECUTION**

Defendant Michael Grimm (hereinafter, "Mr. Grimm") files this Motion to Compel Discovery on the Issues of Selective and Vindictive Prosecution.

## I. BACKGROUND

After more than four years of federal investigators delving into Mr. Grimm's background, the Government has charged Mr. Grimm, a Republican Congressman, with offenses related to a Manhattan health food restaurant he owned from 2006 through 2009, prior to becoming a Congressman.

### A. The Charges

On April 25, 2014, Mr. Grimm was charged in a twenty-count Indictment. The Indictment alleges that some restaurant receipts were not reported to the IRS, that some employees were paid in cash, and that some restaurant employees were not legally residing in the United States. Counts 17 through 19 of the Indictment further allege that in 2013, false testimony was provided by Mr. Grimm in a civil lawsuit brought by a former restaurant employee. *See* Indictment ¶¶ 47-52. There is no venue for Counts 17-19 in the Eastern District of New York, and a separate Motion to dismiss these counts is pending before the Court.

### B. Federal Prosecutor Assigned to Case Resigns, Runs for Political Office

Just three days after the Indictment against Mr. Grimm was announced, one of the lead federal prosecutors who investigated this case publicly resigned and announced his decision to run for a Democratic seat in the New York State Assembly. Notably, the Indictment was made public after the filing deadline for New York's congressional races had passed.[1]

While running for New York State Assembly, the former federal prosecutor has touted his experience in bringing the investigation as one reason why he is a viable candidate for office. In the opening paragraph of his biography on his official campaign website, he highlights his experience as a "former federal prosecutor" and "acting deputy chief of the Public Integrity Section," and how he "took down corrupt elected officials who used taxpayer dollars to fund lavish lifestyles."

### C. The Government Refuses to Provide Information About Former Federal Prosecutor's Involvement in Investigation

On October 1, 2014, in order to determine the extent of the former federal prosecutor's involvement in the investigation of Mr. Grimm, counsel for Mr. Grimm sent a letter to the Government (D.E. 34). The letter sought information regarding the former federal prosecutor's involvement in the investigation, specifically the number of grand jury subpoenas he directed to be issued, the number of times he appeared before the grand jury, the number of witness interviews he participated in, the role he had in seeking authorization for a tax grand jury investigation, and the role he had in seeking authorization for charges to be brought. The request was narrowly tailored and focused. The purpose of the request was to gather information in order to determine

---

[1] The filing deadline for Primary Ballot Access in New York was April 10, 2014. *See* 2014 Congressional Primary Election Dates and Candidate Filing Deadlines for Ballot Access, *available at* http://www.fec.gov/pubrec/fe2014/2014pdates.pdf.

whether Mr. Grimm's constitutional rights were violated. In a letter dated October 2, 2014, the Government denied this request for information (D.E. 32).

The request also sought specific information about when the former federal prosecutor notified the United States Attorney's Office ("USAO") of his intention to leave the USAO to run for political office. Again, the letter sought particular information from the Government in order to determine whether Mr. Grimm's constitutional rights have been violated.

On its face, the involvement of a former federal prosecutor (who is now running for political office) in the prosecution of a politician from the opposite party, for charges relating to a cash restaurant business owned, outside his jurisdiction, by the politician prior to becoming a Congressman, raises questions regarding the propriety of the investigation.

### D. The Investigation Was Conducted By Agents Who Previously Worked With Mr. Grimm at the Federal Bureau of Investigation

Prior to becoming a United States Congressman, Mr. Grimm worked as a Special Agent with the Federal Bureau of Investigation in the New York Field Office. This is the same FBI field office that led the investigation of Mr. Grimm. There are at least two agents – supervisors in the Public Corruption Unit of the Bureau's New York office during this investigation – who have had personal conflicts with Mr. Grimm. To ensure the investigation was to be conducted by agents without any personal biases towards Mr. Grimm, in June 2012, September 2012, and again in January 2014, attorneys for Mr. Grimm requested that the Justice Department in Washington, D.C. remove the FBI's New York office from the investigation and have the matter investigated out of Washington, D.C's Public Integrity Section. These requests went unanswered without explanation. Further, it is believed that this investigation was initiated by a case agent who had a prior employment relationship with a close associate of a rabbi whose followers were the source of the anonymous allegations against Mr. Grimm.

### E. The Government Refuses to Provide Information About The Agents' Involvement in Investigation

On October 1, 2014, in order to determine what involvement the FBI agents with personal biases had in the investigation, a letter was sent to the Government seeking information about these agents' involvement in the investigation (D.E. 34). This request for information was also denied by the Government in a letter dated October 3, 2014 (D.E. 32).

## II. SELECTIVE PROSECUTION

### A. Applicable Legal Standard To Obtain Discovery Relating To Selective Prosecution

If Mr. Grimm was singled out for prosecution because of his position as a United States Congressman, while other similarly situated individuals were not prosecuted, his constitutional rights have been violated. *United States v. Armstrong*, 517 U.S. 456, 465 (1996).

Generally, federal prosecutors are entitled to broad discretion when enforcing federal criminal law. *Wayte v. United States*, 470 U.S. 598, 607 (1985). Prosecutorial discretion, however, is not unfettered and is constrained by the Constitution. Under the equal protection component of the Due Process Clause of the Fifth Amendment, the Government's prosecutorial decisions may not be invidious or in bad faith, i.e., based upon such unjustifiable standards as race, religion, or the desire to prevent his exercise of constitutional rights. *Oyler v. Boles*, 368 U.S. 448, 456 (1962).

As essential elements of his selective prosecution claim, a defendant must demonstrate that the federal prosecutorial policy had a discriminatory effect and was motivated by a discriminatory purpose. *United States v. Armstrong*, 517 U.S. 456, 465 (1996). To show discriminatory effect, a defendant must establish that "similarly situated individuals of a different classification were not prosecuted." *Id.* To satisfy the discriminatory purpose prong, a defendant must demonstrate that the prosecution was motivated "at least in part because of, not merely in spite of, its adverse effects

upon an identifiable group." *United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003) (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985) (internal citation and quotations omitted)).

Because the Government will often be in exclusive possession of the evidence relevant to proving discriminatory purpose, the standard to obtain discovery of evidence of selective prosecution is somewhat less rigorous. Rather than providing clear evidence of discriminatory effect and motive (as required for evaluation of the merits of a selective prosecution defense), to obtain discovery a defendant need only produce "some evidence tending to show the existence of the essential elements of the defense." *Armstrong*, 517 U.S. at 468 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211-12 (2d. Cir. 1974) (identifying that once a threshold showing of "some evidence tending to show the existence of the essential elements of the defense" is demonstrated, discovery is warranted where the defendant also shows "that the documents in the government's possession would indeed be probative of the elements.").

Accordingly, under the *Armstrong* standard, a defendant must make at least "a credible showing of different treatment of similarly situated persons" to establish a colorable basis for a finding of discriminatory effect and consequently to become eligible for discovery. *United States v. Sanders*, 17 F. Supp. 2d 141, 145 (E.D.N.Y. 1998) (quoting *Armstrong*, 517 U.S. at 470); *see also United States v. Al Jibori*, 90 F.3d 22, 25 (2d. Cir. 1996).

Several New York district courts have permitted discovery based on claims of selective prosecution. In *United States v. Napper*, the Court found that although the defendant did not provide evidence sufficient to satisfy both prongs of the selective prosecution test, his showing of a "colorable basis" warranted discovery. *United States v. Napper*, 553 F. Supp. 231, 234 (E.D.N.Y. 1992) (noting that "information which might support a selective prosecution claim would exist, if at all, in the possession of the government."); *see also United States v. Carron,* 541

F. Supp. 347, 350 (W.D.N.Y. 1982) (finding that defendants' proffered statements provided a "colorable basis" that they were selectively prosecuted, thus establishing entitlement to discovery in support of their selective prosecution claim).

   B.   **Argument**

Because direct evidence of discrimination is rarely available, a defendant may present statistical disparities and other indirect evidence to show bias or discriminatory motive. *See Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 17 (D.D.C. 1997). Although the Government has more comprehensive access to prosecution statistics, a review of the docket for the Eastern District of New York reveals instances where defendants were charged with particular statutory sections.[2] A search of the docket for the Eastern District of New York shows that for a ten-year period, between January 1, 2004 and October 6, 2014, 118 defendants were charged with violating 26 U.S.C. § 7206.[3] In that same time period, eight defendants were charged with violating 26 U.S.C. § 7212(a); six of those eight defendants were also charged with violating § 7206. Of the six defendants charged with both § 7206 and § 7212, only one defendant – Mr. Grimm – was also charged with 18 U.S.C. § 1341. Of the six defendants charged with both § 7206 and § 7212, only one defendant – Mr. Grimm – was also charged with 18 U.S.C. § 1343. Of the six defendants charged with both § 7206 and § 7212, only one defendant – Mr. Grimm – was also charged with 18 U.S.C. § 1347.

---

[2] Mr. Grimm has requested that the United States Attorney's Office provide him with this and other information. *See* October 1, 2014 Letter to the Government Regarding Investigation, nos. 12-14 (D.E. 34). However, the Government has declined to do so. *See* October 2, 2014 Letter in Response to the Defendant's Discovery Requests (D.E. 32).

[3] The Eastern District of New York docket figures are inclusive of Mr. Grimm.

A search of the docket for the Southern District of New York shows that for a ten-year period, between January 1, 2004 and October 6, 2014, 93 defendants were charged with violating 26 U.S.C. § 7206. In that same time period, 38 defendants were charged with violating 26 U.S.C. § 7212(a); 17 of those 38 defendants were also charged with violating § 7206. Of the 17 defendants charged with violating both § 7206 and § 7212, not one defendant was also charged with violating 18 U.S.C. §§ 1341, 1343, and 1347. Moreover, a search of the nationwide federal dockets revealed no other instances where a defendant was charged with violating 26 U.S.C. § 7206, 26 U.S.C. § 7212(a), 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1347.

Significantly, of the individuals who were charged in the Eastern District of New York with violating both § 7206 and § 7212, it does not appear that any of the prosecutions relate to a cash restaurant business. Although precise statistics do not exist regarding the propensity of underreporting cash receipts, it is widely known that such business practices are widespread among restaurants and other cash businesses.[4] That Mr. Grimm appears to be the only individual prosecuted for business practices relating to a Manhattan (Southern District of New York) cash business in the Eastern District of New York over the last ten years raises serious questions, at the very least.

The paucity of prosecutions for violations of the above-mentioned statutes presents a strong inference that Mr. Grimm has been selectively prosecuted. The statistical data is even more persuasive when the Court considers that the determination to prosecute was made by a federal prosecutor who resigned from the USAO to run for political office representing the opposing

---

[4] *See generally Examination Techniques for the Food and Beverage Industries (Restaurants and Bars)*, IRS RETAIL INDUSTRY AUDIT TECHNIQUE GUIDE, http://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/Retail-Industry-ATG-Chapter-4-Examination-Techniques-for-the-Food-and-Beverages-Industries-Restaurants-and-Bars (last updated Sept. 24, 2014).

political party immediately after Mr. Grimm's Indictment became public. This evidence certainly constitutes a "credible showing of different treatment of similarly situated persons" to establish a colorable basis for a finding of discriminatory effect, thus entitling Mr. Grimm to discovery on the issue of selective prosecution. *See Sanders,* 17 F. Supp. 2d at 145.

## III. VINDICTIVE PROSECUTION

### A. Applicable Legal Standard To Obtain Discovery Relating To Vindictive Prosecution

A prosecution brought with a vindictive motive, penalizing individuals who choose to exercise their constitutional rights, violates the Due Process Clause of the Fifth Amendment.

In establishing a claim of prosecutorial vindictiveness, a defendant must demonstrate that "(1) the prosecutor harbored genuine animus toward the defendant . . . and (2) he would not have been prosecuted except for the animus." *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999) (internal citations omitted). A finding of actual vindictiveness requires direct evidence, such as a prosecutor's statement justifying his action, which is seldom available. *United States v. Johnson*, 171 F.3d 139, 140-41 (2d Cir. 1999) (quoting *United States v. Goodwin*, 457 U.S. 368, 380-81 (1984) (internal quotations omitted)).

However, a presumption of prosecutorial vindictiveness arises when "the circumstances of a case pose a 'realistic likelihood' of [prosecutorial] vindictiveness," focusing on whether the decision to prosecute was based on a vindictive motive, rather than a legitimate one. *United States v. King,* 126 F.3d 394, 397 (2d Cir. 1997) (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974). Although this presumption of prosecutorial vindictiveness is typically inapplicable in the pretrial setting, a defendant may be entitled to a pretrial presumption of prosecutorial vindictiveness if he can show a realistic likelihood of vindictive prosecution after consideration of the "totality of the objective circumstances." *King,* 126 F.3d at 397-398.

As noted above, to obtain discovery on the issue of selective prosecution, courts require only some evidence of discriminatory effect and intent. *See United States v. Alameh*, 341 F.3d 167 (2d Cir. 2003). The Second Circuit applies the same "some evidence" standard in permitting discovery of selective prosecution claims to vindictive prosecution claims. *See United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000).

**B.     Argument**

In an effort to ensure that this investigation was completed in a manner that fairly balanced legitimate law enforcement interests with the rights of Mr. Grimm, counsel for Mr. Grimm made several formal requests to have this investigation transferred to the Public Integrity Section of the Department of Justice in Washington, D.C. *See supra* at 3. Each of these requests went unanswered.

Early in the investigation, Mr. Grimm's concerns stemmed from instances of conflicts of interest within the Bureau. In particular, it is believed that this investigation was initiated by a case agent who had a prior employment relationship with a close associate of a rabbi whose followers were the source of the anonymous allegations against Mr. Grimm. In addition, the investigation was carried out by the FBI's New York Field Office, where Mr. Grimm worked as an agent prior to becoming a Congressman. As mentioned above, there were at least two supervisory agents in the FBI's New York office who had personal conflicts with Mr. Grimm during his employment there.

Additionally, just three days after the Indictment against Mr. Grimm was announced, one of the lead federal prosecutors who investigated this case publicly resigned and announced his decision to run for a Democratic seat in the New York State Assembly.

Moreover, it bears noting that the USAO for the Eastern District of New York has charged Mr. Grimm with violations related to a restaurant located in the Southern District of New York. Further, the Government has expended over four years and countless hours of manpower investigating this case, for which defense counsel estimates a tax loss of less than $250,000.00.

These facts certainly establish a colorable basis for a finding of both discriminatory effect and discriminatory intent, thus entitling Mr. Grimm to discovery on the issue of vindictive prosecution.

## IV. CONCLUSION

In light of the foregoing, Mr. Grimm respectfully requests that the Court order an evidentiary hearing and compel the government to produce information and evidence concerning the investigation of this matter.

Dated: October 6, 2014
Miami, Florida

Respectfully submitted,

/s/ Jeffrey A. Neiman
Daniel Lawrence Rashbaum (DR-4037)
drashbaum@mnrlawfirm.com

Jeffrey A. Neiman
Florida Bar No. 54469
jneiman@mnrlawfirm.com

*Pro Hac Vice Admitted*

MARCUS NEIMAN & RASHBAUM LLP
2 South Biscayne Boulevard, Suite 1750
Miami, Florida 33131
Tel: (305) 400-4261
Fax: (866) 780-8355

*Counsel for Michael Grimm*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 6, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing electronically.

/s/ Daniel Lawrence Rashbaum
Daniel Lawrence Rashbaum

Mr. James Gatta, AUSA
Mr. Anthony Capazzola, AUSA
Mr. Nathan Riley, AUSA
United States Attorney's Office
Eastern District of New York
217 Cadman Plaza East
Brooklyn, New York 11201