JDG:AMC/NR
F.#2014R00763

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

    - against -                            14-CR-248 (PKC)

MICHAEL GRIMM,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM OF LAW IN OPPOSITION TO
THE DEFENDANT'S MOTION TO COMPEL DISCOVERY

                                              LORETTA E. LYNCH
                                            United States Attorney
                                            Eastern District of New York

Anthony M. Capozzolo
James D. Gatta
Nathan Reilly
Assistant U.S. Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in opposition to the defendant Michael Grimm's motion to compel discovery on the issues of selective and vindictive prosecution, filed on October 6, 2014 ("Def.'s Mot."). (See ECF Docket Entry No. 37.) Grimm argues that the Court should order the government to produce discovery relating to the grand jury investigation that resulted in a twenty-count indictment against him. The defendant contends that he is entitled to the discovery he seeks and to an evidentiary hearing because he has made the requisite showings that the government's prosecution of him is both selective and vindictive.

For the reasons set forth below, the defendant's generalized assertions and unsupported speculation are insufficient to establish that he is entitled to the discovery he seeks. His arguments in support of his motion for a hearing and discovery are wholly without merit and, accordingly, the Court should deny it in its entirety.

BACKGROUND

I.  The Indictment

On April 25, 2014, a grand jury returned a twenty-count indictment (the "Indictment" or "Ind.") against the defendant relating to his operation of Healthalicious, a restaurant located in New York, New York, between 2007 and 2010. While the defendant owned and operated the restaurant, he engaged in schemes to fraudulently under-report the wages paid to his workers – many of whom were not lawfully permitted to work within the United States – and under-report the true amount of the restaurant's earnings to federal and New York State tax and insurance authorities. (Ind. ¶¶ 3-4, 14-16, 18-25.) As a result, the

2

defendant fraudulently lowered the federal and state taxes and the amount of workers' compensation insurance premiums the restaurant owed and paid. (Ind. ¶¶ 3, 18-25.) The defendant concealed hundreds of thousands of dollars in employee wages and gross receipts earned by the restaurant, which fraudulently deprived the federal and New York State governments of sales, income and payroll taxes. (Id.) In connection with these schemes, the defendant is charged with violations of 26 U.S.C. § 7212 (Obstructing and Impeding the Due Administration of the Internal Revenue Laws) (Count One); 18 U.S.C. § 371 (Conspiracy to Defraud the United States) (Count Two); 26 U.S.C. § 7206(2) (Aiding and Assisting the Preparation of False and Fraudulent Tax Returns) (Counts Three through Five); 18 U.S.C. § 1347 (Health Care Fraud) (Count Six); 18 U.S.C. § 1343 (Wire Fraud) (Counts Seven through Eleven); 18 U.S.C. § 1341 (Mail Fraud) (Counts Twelve through Sixteen); and 8 U.S.C. §§ 1324 and 1324a (Unlawful Employment of Aliens) (Count Twenty).

Moreover, in an attempt to conceal these criminal schemes, in January 2013, the defendant lied under oath during a civil deposition taken in connection with a lawsuit brought against the defendant by two of his former employees, which alleged that the defendant had not paid them minimum wage or overtime pursuant to the federal and New York State labor laws when he owned and operated Healthalicious, among other claims. (See Ind. ¶¶ 5, 26-27) In the deposition and among other lies, the defendant falsely denied that he had paid the restaurant's workers in cash. (See Ind. ¶ 5, 27.) Accordingly, the Indictment further charges the defendant with perjury and obstruction in connection with his false testimony, in violation of 18 U.S.C. § 1623 (Perjury) (Counts Seventeen and Eighteen) and 18 U.S.C. § 1512(c) (Obstruction of an Official Proceeding) (Count Nineteen).

II.   The Defendant's October 1, 2014 Discovery Requests

In a letter to the government dated October 1, 2014, the defendant sought answers to 14 specific questions regarding the investigation that preceded the Indictment and other unrelated cases. In particular, and among other things, the defendant requested information about the role in the investigation of an Assistant United States Attorney assigned to this case (the "Former AUSA"), who upon his resignation from the United States Attorney's Office for the Eastern District of New York (the "Office"), began an electoral campaign for a seat in the New York State Assembly as a Democrat. In addition, the defendant requested information about when the Former AUSA informed the Office of his intention to seek elected office and of his intention to resign. Moreover, the defendant requested information about what role, if any, two particular special agents of the Federal Bureau of Investigation ("FBI") – a Supervisory Special Agent and an Assistant Special Agent in Charge in the FBI's New York Office – played in the investigation and the extent of the FBI's participation in the investigation of tax crimes by the defendant. Finally, the defendant sought information regarding unrelated cases investigated and prosecuted by the Office. Specifically, the defendant requested that the government inform him about the number of criminal indictments sought by the office regarding restaurants (a) paying employees in cash, (b) underreporting cash sales to the Internal Revenue Service ("IRS") and (c) hiring illegal aliens. (See ECF Docket Entry No. 34.)

The government responded to the defendant's October 1, 2014 discovery requests by letter dated October 2, 2014. Noting that the disclosures sought by the defendant

4

were irrelevant to the charges in the Indictment and not discoverable under the law, the government declined to provide answers to his 14 requests. (See ECF Docket Entry No. 32.)

III.    The Motion to Compel Discovery

The defendant now moves the Court for an evidentiary hearing and for an order compelling the government to provide him with discovery about the investigation, including the information he sought in his October 1, 2014 letter to the government, which the defendant asserts will support his claims that the Indictment is the result of a selective and vindictive prosecution. The defendant – who is presently a Republican member of the United States House of Representatives – essentially asserts that he has been unfairly targeted for prosecution because of his political affiliation, and that he accordingly has been charged with crimes with which other similarly situated individuals have not. In support of his motion, the defendant advances what he claims is a statistical analysis of prosecutions brought within the Eastern District of New York ("EDNY") and the Southern District of New York ("SDNY") within the last 10 years. Citing that analysis, the defendant argues that because he "appears to be the only individual prosecuted for business practices relating to a Manhattan . . . cash business in the Eastern District of New York over the last [10] years" there is "a strong inference that [he] has been selectively prosecuted." (Def.'s Mot. at 7.) The defendant claims that this "strong inference" is supported by the fact that "the decision to prosecute" him was "made" by the Former AUSA, "a federal prosecutor who resigned from the [Office] to run for political office representing the opposing political party immediately after [the] Indictment became public." (Id. at 8.)

5

The defendant further argues that his claims above, when considered in connection with what he asserts are "conflicts of interest" within the FBI's New York Office, support his argument that there is a "colorable basis" that his prosecution is also vindictive; therefore the defendant claims that he is also entitled to the discovery he seeks on that ground. Specifically, the defendant – a former FBI agent in New York Office – asserts that "at least two" unnamed supervisory agents in the New York Office "had personal conflicts" with him while he was employed there. (Id. at 9.)  Moreover, the defendant claims that "it is believed that this investigation was initiated by a case agent who had a prior employment relationship with a close associate of a rabbi whose followers were the source of the anonymous allegations" against him. (Id.)

For the reasons that follow, the defendant's arguments in support of his motion are without merit and his motion for an evidentiary hearing and to compel discovery should be denied in its entirety.

## ARGUMENT

I. The Defendant Is Not Entitled to the Discovery He Seeks Regarding Selective Prosecution

The defendant bases his request for discovery in support of his selective prosecution defense on two distinct foundations – an overly selective statistical analysis of federal criminal charging decisions and a vaguely articulated claim of personal animus against the defendant and other inappropriate motives attributed to the Former AUSA and FBI agents. These stated rationales are wholly insufficient to establish that the defendant is being charged for unconstitutional reasons. Moreover, the defendant has failed to put adequate evidence

6

before the Court to establish that a "colorable basis" for his claim that the discovery he seeks would actually support his selective prosecution claim.

      A.      <u>Legal Standard</u>

A selective prosecution claim "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." <u>United States v. Armstrong</u>, 517 U.S. 456, 463 (1996). A "presumption of regularity" supports prosecutorial decisions, and "'in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties.'" <u>Id.</u> at 464 (quoting <u>United States v. Chemical Foundation, Inc.</u>, 272 U.S. 1, 14-15 (1926)). "'So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" <u>Id.</u> (quoting <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 364 (1978)). Accordingly, the standard for a defendant to successfully assert such a selective prosecution claim is "a demanding one." <u>Id.</u> As the court in <u>United States v. Berrios</u> set forth:

> To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as 'intentional and purposeful discrimination.' . . . Mere

7

> 'conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.'

501 F.2d 1207, 1211 (2d Cir. 1974) (internal citations omitted).

The standard for discovery in aid of a selective prosecution claim is "correspondingly rigorous." Armstrong, 517 U.S. at 468. In Berrios the court stated:

> In order to show . . . a 'colorable basis' entitling the defense to subpoena documentary evidence required to establish a selective prosecution defense . . . we would first require some evidence tending to show the existence of the essential elements of the defense and that the documents in the government's possession would indeed be probative of these elements.

501 F.2d at 1211. In United States v. Sanders, 17 F.Supp.2d 141 (E.D.N.Y. 1998), aff'd, 211 F.3d 711 (2d Cir. 2000), the district court provided further guidance on applying the test set forth in Berrios, and denied the defendant's request for discovery. The Sanders court noted that the two-pronged test set forth in Berrios is designed to "prevent unwarranted fishing expeditions to obtain documents to which the defense would not normally be entitled." Id. at 145. The court further clarified that "mere assertions and generalized proffers of information and belief are insufficient." Id.

    B.    Application

The defendant fails to establish a "colorable basis" entitling him to discovery in support of his selective prosecution claim. First, the statistical analysis he advances in support of his argument that he has been singled out for prosecution when compared to "similarly situated" individuals rests upon a definition of "similarly situated" that effectively preordains the outcome the defendant seeks, thereby rendering the analysis meaningless. Second, the defendant fails to set forth anything beyond "mere assertions and generalized

8

proffers of information and belief" to support that he has been prosecuted for unconstitutional reasons. His claims about the Former AUSA and unnamed FBI agents are precisely the type of conclusory allegations that courts have repeatedly held are insufficient establish a basis upon which to order the government to produce discovery to defendants.

        1.        **The Defendant Has Not Established That He Has Been Singled Out For Prosecution**

In support of his argument that he is being treated disparately from other, similarly situated individuals, the defendant notes that he has been unable to identify any other defendants in the EDNY who have been charged in the past 10 years with violations of both 26 U.S.C. §§ 7206 and 7212 and also a charge of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343) or health care fraud (18 U.S.C. § 1347). (Def.'s Mot. at 6.) The defendant also addresses charges brought in the SDNY in the past 10 years. Unable to support an assertion that there are no SDNY defendants charged with violations of both 26 U.S.C. §§ 7206 and 7212 and also for a separate charge of mail, wire or health care fraud, the defendant instead states that he has been unable to identify any SDNY defendants who have been charged with all five offenses in one case. (Id.) The gravamen of the defendant's argument is that because there are no other cases in either the EDNY or the SDNY where a defendant is charged with the same five offenses with which he is charged, he must have been selectively prosecuted. The defendant's argument fails.

As a threshold matter, the defendant's carefully selected statistics have little value as evidence of a purported bias in this case. The defendant conveniently ignores prosecutions of criminal tax offenses and related frauds where particular mail, wire or health

9

care fraud counts may not have been charged not because of any bias, but because such charges were not warranted by the evidence. A review of reported cases in the Second Circuit and elsewhere readily identifies defendants – including public figures – who have been charged with tax crimes under Title 26 and also fraud charges under Title 18 much like the defendant. See, e.g., United States v. Josephberg, 562 F.3d 479 (2d Cir. 2009) (affirming investment advisor defendant's conviction for crimes including violations of 26 U.S.C. §§ 7206 and 7212 and 18 U.S.C. §371 and 1347); United States v. Giffen, 473 F.3d 30 (2d Cir. 2006) (noting that the defendant banker was charged with violations of, inter alia, 26 U.S.C. §§ 7206 and 7212 and 18 U.S.C. §§ 371, 1341 and 1343); United States v. Kerik, 615 F. Supp. 2d 256 (S.D.N.Y. 2009) (where former New York City Police Commissioner and nominee for Secretary of the Department of Homeland Security was charged with violations of 26 U.S.C. §§ 7206 and 7212 and also 18 U.S.C. §§ 1341 and 1343); United States v. Ryan, 759 F. Supp. 975 (N.D. Ill 2010) (where former Democratic governor of Illinois was charged with violations of 26 U.S.C. §§ 7206 and 7212 and 18 U.S.C. § 1341); United States v. Zgoznik, 2009 WL 1182874 (N.D. Ohio April 30, 2009) (where defendants were convicted of violations of 26 U.S.C. §§ 7206 and 7212 and 18 U.S.C. §§ 371 and 1341); and United States v. Bennett, 29 F. Supp. 2d 236 (E.D. Pa. 1997) (charging defendant involved in a check kiting scheme with violations of 26 U.S.C. §§ 7206 and 7212 and 18 U.S.C. §§ 1341 and 1343).

The defendant also claims "it is widely known that such business practices [underreporting cash receipts] are widespread among restaurants and other cash businesses," implying that the government routinely ignores such behavior, thereby supporting his claim that he has been selectively prosecuted here. (See Def.'s Mot. at 7.) To the contrary, the IRS

has identified more than 10 criminal prosecutions nationally between 2012 and 2014 involving the use of cash payrolls to avoid taxes, and numerous prosecutions involving the failure to pay federal employment taxes more generally.[1] These cases include instances in which cash payroll were used in restaurants to avoid taxes, including a case in the District of South Carolina charging a defendant with violations of 26 U.S.C. § 7202 and hiring undocumented workers under 8 U.S.C. § 1324(a). See United States v. Fang, No. 12-CR-798 (RMG) (D.S.C.).[2]

Moreover, an EDNY defendant pleaded guilty in 2012 to a violation of 26 U.S.C. § 7206 for conduct which involved "divert[ing]. his business's cash receipts from the corporate bank account, fil[ing] false corporate tax returns that significantly understated the business's gross receipts, and underpa[ying] payroll taxes that were due and owing." United States v. Park, 758 F.3d 193, (2d Cir. 2014); see also United States v. Calasuonno, 697 F.3d 164, 168 (2d Cir. 2012) (where a defendant pleaded guilty in the SDNY to conspiracy to

---

[1] See http://www.irs.gov/uac/Examples-of-Employment-Tax-Fraud-Investigations-Fiscal-Year-2012; http://www.irs.gov/uac/Examples-of-Employment-Tax-Investigations-Fiscal-Year-2013; and http://www.irs.gov/uac/Examples-of-Employment-Tax-Fraud-Investigations-Fiscal-Year-2014 (last visited Oct. 20, 2014).

[2] In addition, the defendant attempts to narrow the class of individuals to whom he claims he is similarly situated to only those involved in cash-business restaurants. (See Def.'s Mot. at 7.) To the extent cash payroll cases may be less frequently prosecuted, one explanation may be a lack of the documentary evidence necessary to prove tax and other fraud crimes. Here, however, there is substantial evidence corroborating the existence of the Healthalicious cash payroll and the defendant's role in administering it, undermining any claim of selective prosecution. See, e.g., United States v. Lewis, 513 F.3d 20, 27 (1st Cir. 2008) ("equivalency of the evidence against each prospective defendant" is a factor legitimately to be considered by prosecutors in making a decision to prosecute).

commit tax fraud and aiding and abetting the preparation of false tax returns, originating from his "'off the books' cash payments to certain employees over the course of five years").

As set forth above, the reported cases alleging conduct similar to the conduct charged in this case make clear that other individuals similarly situated to the defendant have been proceeded against both locally and elsewhere. Accordingly, the defendant cannot establish a colorable basis that he is entitled to the discovery he seeks.

2. The Defendant Has Failed to Allege that He Has Been Selected for Prosecution on a Constitutionally Questionable Basis

The defendant proffers no evidence – indeed, he makes no mention at all – of how he believes the discovery he seeks will prove that the government selectively prosecuted him in "invidious or bad faith" such that the prosecution is "based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." The defendant does not contend – because he cannot – that he is a member of a constitutionally-protected class or that consideration of race or religion or any other constitutionally-protected status influenced the decision to prosecute him. Nor does the defendant set forth any particular constitutional right that he claims the government's prosecution was designed to infringe upon; rather, he argues in conclusory fashion that he is seeking a hearing and discovery to determine if his "constitutional rights have been violated." (Def's Mot. at 3.) His arguments are unavailing.

Essentially, the defendant contends that he has been impermissibly targeted for prosecution due to his political affiliation, but he fails to detail sufficient facts to establish a "colorable basis" for such a claim. He rests his argument on the fact that the Former AUSA

resigned from the Office to become for a New York State Assembly seat as a Democrat, a fact which the defendant claims "raises questions about the propriety of the investigation." (Def.'s Mot. at 3.) The defendant does not set forth anything more than unsupported innuendo that he <u>must</u> have been impermissibly selected for prosecution solely because of his political affiliation and because the Former AUSA must have participated in the investigation solely to burnish his credentials before running for elective office. None of these "mere allegations" establish the indicia of bad faith required for the Court to order an evidentiary hearing or to order the government produce the discovery the defendant seeks.

Moreover, the defendant's arguments have no basis in fact. First, the defendant's allegations ignore that over the last four years, all of the elected officials prosecuted by the Office have been members of the Democratic Party. Also, while the defendant urges the Court to consider that the Former AUSA "made" the "determination to prosecute" him (Def.'s Mot. at 7.), the Former AUSA was, in fact, one prosecutor among several in the Office involved in the investigation, under the supervision of the United States Attorney for the District. Even assuming <u>arguendo</u> that the Former AUSA acted with some improper motive in investigating the defendant – which he did not – the defendant's allegations require the Court to believe that the Former AUSA was able to secure the agreement of his colleagues, supervisors, the United States Attorney, as well as members the Tax Division of the Department of Justice and agents and supervisory agents of the FBI and IRS in a plan to improperly select the defendant for prosecution. The defendant's arguments are accordingly absurd on their face and the Court therefore should deny his efforts to use his unsupported theories as a means of engaging in a "fishing expedition."

II.     The Defendant Is Not Entitled to the Discovery He Seeks
        Regarding Vindictive Prosecution

The defendant's effort to obtain discovery for his claim of vindictive prosecution is equally without merit. He offers little more than unsupported speculation about the purportedly improper motives of the FBI and the Former AUSA and offers nothing remotely approaching the showing of improper animus that is the touchstone of a claim of vindictive prosecution. Far from demonstrating any actual animus, the defendant's allegations are insufficient even to establish a basis to believe that such animus may have existed and, as such, his request for discovery should be denied.

   A.   Legal Standard

As the decision to prosecute generally rests within a prosecutor's broad discretion, "the decision to prosecute violates due process when the prosecution is brought in retaliation for [a] defendant's exercise of his legal rights." United States v. White, 972 F.2d 16, 19 (2d Cir. 1992) (citing Blackledge v. Perry, 417 U.S. 21, 27 (1974)); see Bordenkircher 434 U.S. at 363 ("[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort"). A prosecutor's "vindictive motive 'will be found where there is direct evidence of actual vindictiveness, or the circumstances give rise to a 'rebuttable presumption of a vindictive motive.'" United States v. King, 126 F.3d 394, 397 (2d Cir. 1997) (citation omitted).

To establish an actual vindictive motive, a defendant must show that "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking

14

horse,' and (2) [the defendant] would not have been prosecuted except for the animus." United States v. Sanders, 211 F.3d 711, 717 (2d Cir. 2000) (quoting United States v. Koh, 199 F.3d 632, 640 (2d Cir. 1999) (bracketed text in original)).  Absent direct evidence of such animus, a defendant may establish a rebuttable presumption of prosecutorial vindictiveness by showing that the circumstances pose a "realistic likelihood" of prosecutorial vindictiveness. Id. (quoting King, 126 F.3d at 397 (citation omitted)).  This presumption is rebutted if the government demonstrates "legitimate, articulable, objective reasons" for the challenged action.  King, 126 F.3d at 399 (quoting United States v. Contreras, 108 F.3d 1255, 1263 (10th Cir. 1997)).  Moreover, "[a] presumption of vindictiveness generally does not arise in a pretrial setting."  Id. (citing Koh, 199 F.3d at 639-40).

With respect to a defendant's request for discovery or an evidentiary hearing related to a claim of vindictive prosecution, the standard is a "rigorous" one, and a "significant barrier to the litigation of insubstantial claims."  Sanders, 211 F.3d at 717 (noting that the court "saw no reason to apply a different standard to obtain discovery on a claim of vindictive prosecution" than on a claim of selective prosecution) (citations and internal quotation marks omitted).  To merit discovery on such a claim, a defendant must present some evidence of genuine animus, "not the mere possibility that animus might exist under the circumstances." Id. at 718.  Indeed, "[i]t would be too easy for defendants to obtain discovery on vindictive prosecution claims if all that was required was to identify a potential motive for prosecutorial animus."  Id.

15

B.  Application

The defendant has failed to provide any direct evidence of animus or that any presumption of vindictiveness should apply. The defendant premises his claim of prosecutorial vindictiveness on the same slender reeds as he does his selective prosecution argument. He bases his vindictiveness claim primarily on unspecified conflicts involving the FBI, as well as his unsupported speculation about the role of the Former AUSA in the investigation. With respect to his allegations involving the FBI, the defendant claims that "it is believed" that the investigation was initiated by an FBI agent with a prior relationship to an associate of a "rabbi whose followers were the source of the anonymous allegations" against him. (Def.'s Mot. at 9.) Second, he notes that "at least" two other agents in the FBI's New York Office had "personal conflicts" with him. (Id.) As the defendant does not come close to meeting the rigorous standard required in this Circuit for discovery on a claim of vindictive prosecution, his motion should be denied.

The defendant's motion is replete with precisely the type of "potential" motives for prosecutorial animus that the Second Circuit has rejected as a basis for obtaining discovery in vindictive prosecution claims. The defendant provides no direct evidence that government bore or bears any animus for him, let alone that such animus was the basis for his prosecution. Moreover, he has made no showing that but for such animus, no charges would have been brought against him. See United States v. Chalmers, 474 F. Supp. 2d 555, 569-570 (S.D.N.Y. 2007) (denying defendant's claim of vindictive prosecution where he could show neither animus nor that he would not have been prosecuted absent that animus). Here, the defendant offers vague assertions of conflicts involving the FBI but does not specify how these conflicts

16

involving the unnamed agents to whom he refers are either direct evidence of animus on the part of the government or how these unspecified conflicts establish circumstances that give rise to a "realistic likelihood" of prosecutorial vindictiveness.  In light of the sparseness of the defendant's allegations, the defendant's motion for a hearing and discovery should fail.  See id. at 570 (ruling that "[m]ere assertions and generalized proffers on information or belief are insufficient" to justify discovery on a vindictive prosecution claim) (quoting United States v. Fares, 978 F.2d 52, 59 (2d Cir. 1992)).

## CONCLUSION

For all of the foregoing reasons, the defendant's motion for an evidentiary hearing and to compel discovery on the issues of selective and vindictive prosecution should be denied in its entirety.

Dated:   Brooklyn, New York
         October 20, 2014

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney

                                 By:    /s/_____
                                        Anthony M. Capozzolo
                                        James D. Gatta
                                        Nathan Reilly
                                        Assistant U.S. Attorneys

cc:   Jeffrey A. Neiman, Esq. (by ECF)
      Daniel Rashbaum, Esq. (by ECF)

17